**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

FRED POWELL,

                       Plaintiff,

   v.                                    No. 08-CV-371
                                           (NAM/DRH)

BRIAN FISCHER, Commissioner, New York
State Department of Correctional Services;
JEFFREY TEDFORD, Superintendent,
Camp Gabriels Correctional Facility; DR.
ROY PARKER, P.A., Camp Gabriels
Correctional Facility; and DR. BERGAMINI,
Physician, Adirondack Correctional Facility,

                       Defendants.

---

**APPEARANCES:**                         **OF COUNSEL:**

FRED POWELL
Plaintiff Pro Se
07-A-4499
Franklin Correctional Facility
Post Office Box 10
Malone, New York 12953

HON. ANDREW M. CUOMO          JAMES SEAMAN, ESQ.
Attorney General for the              Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Fred Powell ("Powell"), an inmate in the custody of the New York State

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, DOCS Commissioner and three DOCS employees, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 40. Powell has not responded to the motion. For the following reasons, it is recommended that defendants' motion be granted.

## I. Failure to Respond

Powell did not oppose defendants' motion. The failure to respond continued even after the Court, acting sua sponte, granted Powell an extension of time to file a response and reminded him of the consequences of failing to do so. See Dkt. Nos. 41 (order), 42 (receipt for service).

"Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Defendants provided such notice in their Notice of Motion here. Dkt. No. 40. The Court reiterated that notice in its order. Dkt. No. 41. Despite these notices, Powell failed to respond. "The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Champion, 76 F.3d at 436. Even in the absence of a response, a defendant is entitled to summary judgment only if the material facts demonstrate his or her entitlement to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

Because Powell has not responded to raise any question of material fact, the facts as

set forth in defendants' Rule 7.1 Statement of Material Facts (Dkt. No. 40-24) [hereinafter "Defs. Statement"] are accepted as true. Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., No. 00-CV-1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) (citing Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)); see also N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original).

## II. Background

### A. Prior Incarceration

Powell was first incarcerated in March 2000, prior to which, he had experienced no medical problems with his knees. Defs. Statement ¶ 2. After arriving into DOCS custody, Powell complained of pain, clicking, numbness, and locking in his knees. Id. ¶ 3. Consequently, both knees were x-rayed on September 29, 2000. Id. ¶ 4. The x-rays were negative. Id. Powell continued to complain of pain, and was sent to physical therapy in February 2001, despite no significant medical findings indicating that therapy was appropriate. Id. ¶ 5. The physical therapy ended in May 2001 with the therapist noting that therapy was not effective for Powell's "multiple and fluctuating complaints." Id.

At or about the same time, Powell was examined by an orthopedic specialist who ordered MRIs of both knees. Defs. Statement ¶ 6. The MRIs were conducted on June 9, 2001, showing that the left knee was normal and that the right knee showed "minimal thinning of the cartilage on the knee cap, but was otherwise normal." Id. ¶ 7 (internal quotation marks omitted). Powell saw the orthopedist again in June of 2001, where it was

noted that Powell maintained a full range of motion and tested within the normal limits, though there were a few positive findings during the examination. Id. ¶ 8. Powell was again prescribed physical therapy, despite "no objective clinical signs of any abnormality . . . ." Id. ¶ 9. Powell attended physical therapy for approximately one month before "the therapist requested that the therapy be discontinued due to [Powell's] lack of motivation." Id. ¶ 10.

On October 8, 2001, an orthopedist who performed a right knee arthroscopy on Powell, removing synovial plica.[2] Defs. Statement ¶ 11. No other abnormalities were discovered. Id. Despite medical advice to remain in the infirmary to recover from the surgical procedure, Powell ignored the advice and left the infirmary immediately. Id. In February 2002, the orthopedist recommended a left knee arthroscopy looking for possible meniscal tears. Id. ¶ 12. On September 23, 2002, the orthopedist performed a right knee arthroscopy and found no torn cartilage. Id. ¶ 13.

In February 2003, Powell saw a different orthopedic specialist for continued complaints of knee pain. Defs. Statement ¶ 14. During the examination, medical records noted a "normal range of motion, an insignificant patellar apprehension test, a questionable McMurray's test and a stable joint, with some tenderness on the inside of the knee." Id. ¶ 15. The orthopedist performed a left knee arthroscopy on August 26, 2003, finding no meniscal or ligament tears, general normal findings, and "shredded plica over the medial . . . condyle . . . which was removed." Id. ¶ 16 (internal quotation marks omitted). As Powell

---

[2] "The knee joint is lubricated with . . . synovial fluid [which] . . . is surrounded by and produced by . . . the synovial sheath." Synovial Plica (Patella Plica), <http://www.sportsinjuryclinic.net/cybertherapist/front/knee/synovial_plica.htm> (visited Feb. 11, 2010). "The synovial plica is a . . . fold found along the inside border of the knee cap." Id. The main symptom is pain and treatment includes removal via an arthroscope. Id.

had done before, he left the infirmary immediately after surgery against medical advice. Id. ¶ 17.

Approximately one year later, Powell was released from prison. Id. ¶ 18. Powell was free from incarceration for more than three years, during which time he continued to experience knee pain but sought no medical attention for such pain. Id. ¶¶ 19, 21-22. Powell claims he was that unable see a physician because he had no insurance, though both probation and Social Services offered to assist Powell to apply for Medicaid, but Powell refused. Id. ¶¶ 23-26, 27.

### B. Camp Gabriels

Powell returned to custody in August 2007, whereupon he immediately began complaining about knee pain. Defs. Statement ¶ 29. On September 12, 2007, Powell was transferred to Camp Gabriels. Id. ¶ 30. On the day he arrived, Powell complained to staff that he did not want to be at Camp Gabriels because of all the work he would be required to do. Id. ¶ 31. Additionally, Powell told medical staff that he had persistent pain in his knees. Id. ¶ 32.

On September 21, 2007, defendant Parker wrote Powell a prescription for aspirin for his knee pain, but did not examine him until October 3, 2007. Defs. Statement ¶¶ 33-34. Parker's examination was benign, finding nothing wrong with Powell's knees. Id. ¶ 34. Powell requested an MRI, a second opinion, and referral to an orthopedist. Id. ¶ 35. These requests were denied. Id. Parker evaluated Powell again on October 31, 2007, finding "both knees solid, both anterior and posterior cruciate ligaments stable and both medial and lateral collateral ligaments stable as well." Id. ¶ 36. Parker again concluded

that Powell's knees were normal, and Powell again requested MRIs, a second opinion, and a consultation with an orthopedist. Id. ¶¶ 36-37. The requests were again denied. Id. ¶ 37. However, after the visit, Parker ordered Naprosyn, "which has both pain relief and anti-inflammatory properties." Id. ¶ 38.

On November 14, 2007, Powell saw Parker for the final time about his knee complaints. Defs. Statement ¶ 39. Parker again found no abnormality with Powell's knees, Powell again demanded an MRI, referral, and orthopedic consult, and Parker explained that an MRI, second opinion, or specialist consult were all inappropriate "with a normal clinical exam and normal x-rays." Id. ¶¶ 39-40. Powell insisted that his left knee was far more painful than his right, Parker still declined to make any further recommendations, and Powell became aggressive and was escorted from the exam room. Id. ¶¶ 40-41.

On December 2, 2007, Powell filed a grievance complaining about Parker's repeated denials of his requests for consultations with an orthopedist. Defs. Statement ¶ 42. A few days later, while the grievance was pending, Powell was examined by defendant Dr. Bergamini. Id. ¶ 44. Powell complained of torn ligaments in both his knees, which he alleged happened while he was free from incarceration. Id. ¶ 45. Dr. Bergamini "identified a slight laxity of [Powell's] right anterior cruciate ligament and moderate weakness bilaterally . . . [but generally determined that] his knees were good and there was nothing wrong with them." Id. ¶ 46. Powell asked for MRIs, a second opinion, and an orthopedic referral, which were all denied by Dr. Bergamini. Id. ¶ 47. Instead, Dr. Bergamini showed Powell exercises he could do to strengthen his knees and instructed him to return for a follow-up appointment in two weeks. Id. ¶ 47.

On December 20, 2007, the grievance was ultimately denied, relying on the opinions of

6

defendants Parker and Bergamini. Defs. Statement ¶ 50. The following day, Powell was scheduled to see Dr. Bergamini for his follow-up visit, but he refused to go. Id. ¶ 51. Powell continued to see Dr. Bergamini between December and when he commenced this action on May 8, 2008, but Powell did not complain about his knees in any of the subsequent visits. Id. ¶ 52. Powell was transferred from Camp Gabriels in August 2008. Id. ¶ 52. At the subsequent correctional facility, medical personnel ordered MRIs of his knees, "which were both unremarkable except for a trace of fluid in the joints." Id. ¶ 54.

### III. Discussion

In his complaint, Powell alleges that his Eighth Amendment rights were violated when he received inadequate medical treatment for his knees. Defendants move for summary judgment on the grounds that (1) Powell failed to exhaust his administrative remedies, (2) defendants were not personally involved, (3) Powell's constitutional claims are meritless, and (4) defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the

case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendants #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter

v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Exhaustion for an inmate in DOCS custody is generally achieved through the Inmate Grievance Program (IGP).[3] See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1 et seq.. However, when inmates fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims. A court must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the

---

[3] "The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible.  Id. at 688.  Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted).

Here, Powell has undeniably failed to follow the IGP with respect to all defendants except Parker.  There is no indication in the record that Powell was unfamiliar with the procedures or that they were in any way inaccessible to him, especially since he successfully filed, and appealed, a grievance about the medical care which he received from Parker.  Powell does not allege, nor does the record support, a contention that he did not understand the procedure or that he was precluded from engaging in the procedure.  It appears that Powell simply failed to participate in the mandatory administrative system.  This failure is fatal to Powell's claim.  See generally Harris v. Gunderman, 30 F. Supp. 2d 664, 665 (S.D.N.Y. 1999) (dismissing claim pursuant to the PLRA because "the exhaustion requirement [is] mandatory rather than directory . . . .").

Therefore, defendants' motion for summary judgment should be granted on this ground as to all defendants except Parker.

### C. Personal Involvement

Defendants contend that Powell has failed to establish that defendants Fischer and

Parker were personally involved in any of the alleged constitutional deprivations.

"'[P]ersonal involvement of defendantss in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendants participated directly in the alleged constitutional violation;
>
> (2) the defendants, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendants created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendants was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendants exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Fischer

Defendant Fischer, Commissioner of DOCS, was named because he had "control over all the facilities and what goes on inside them," and because Powell wrote him a letter. Defs. Statement ¶ 55.  Thus, it is not alleged that Fischer was directly involved in the

11

incidents surrounding Powell's medical care. Furthermore, to the extent Fischer is named due to his title, the lone fact that he is a supervisor is insufficient to impose personal liability. Wright, 21 F.3d at 501. Additionally, receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. See e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). As there are no allegations, nor does the record support, that Fischer ever received the letter, let alone personally read, reviewed, or investigated its contents, Powell has failed to allege his personal involvement. Moreover, there is nothing in the record to suggest that Fischer was grossly negligent in supervising individuals or deliberately indifferent to the rights of the inmates concerning provision of their medical care.

Accordingly, defendants' motion on this ground as to Fischer should be granted.

### 2. Tedford

Defendant Tedford, Superintendent of Camp Gabriels, was named because of his supervisory position and act of denying Powell's grievance. Defs. Statement ¶ 56. As previously stated, an individual holding a supervisory position cannot be held personally involved based solely upon his or her position. Wright, 21 F.3d at 501. Additionally, allegations that Tedford summarily denied Powell's grievance, without more, are also insufficient to state personal involvement. Warren v. Goord, 476 F. Supp. 2d 407, 413

(S.D.N.Y. 2007). Moreover, there is nothing in the record to suggest that Tedford was grossly negligent in supervising individuals or deliberately indifferent to the rights of the inmates concerning provision of their medical care.

Accordingly, defendants' motion on this ground as to Tedford should be granted.

### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities,

and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In this case, defendants state that Powell has failed to show an objectively serious medical need. First, the objective medical evidence has completely failed to show any type of serious knee injury. Defs. Statement ¶¶ 4-5, 7-11, 15-16, 29, 34, 36, 39, 46, 54. Contentions in the absence of such evidence have been found deficient in demonstrating a serious medical need. See Powell v. Cusimano, 326 F. Supp. 2d 322, 339 (D. Conn. 2004) ("It is clear from other cases . . . that plaintiff's complaints of knee and head pain . . . do not constitute a serious medical need.") (citations omitted).

The lack of such a serious medical need is also demonstrated by Powell's own actions while he was free from incarceration. Powell contends that he suffered pain, but never once sought medical treatment. Defs. Statement ¶¶ 21-22. Powell states that he had no

14

insurance, but the record is clear that both probation and social services offered to assist him with the application for Medicaid and arrangement of further care. Id. ¶¶ 23-26. Nevertheless, Powell refused to accept the assistance and never applied. Id. ¶ 27. Such actions belie his present claims that the pain was so severe, and the situation so urgent and dire, that he required medical attention. Moreover, Powell continued to work in labor intensive jobs during his freedom. Id. ¶ 20. This employment also contradicts contentions that his pain interfered with activities of daily living. As such, Powell has failed to raise a material question of fact as to whether his knee injuries constituted a serious medical condition.

Powell has also failed to establish the subjective prong of the analysis. The record belies any allegations of defendants failing to treat Powell. Upon arrival at Camp Gabriels, Parker reviewed Powell's medical records, prescribed him pain relief, and personally examined him shortly thereafter. Defs. Statement ¶¶ 33-34. Powell saw Parker about his knee pain three times in a six week period. Id. ¶¶ 34, 36, 39. Such actions refute any claim that a defendant delayed or interfered with treatment. The same is true of Dr. Bergamini, who examined Powell just days after Powell filed his grievance against Parker. Id. ¶ 44. Such actions refute any claims of delay or indifference.

Additionally, both medical professionals examined Powell and agreed that there was nothing wrong with his knees. Defs. Statement ¶¶ 34, 36, 39, 46. Such findings are supported by the prior accounts from the physical therapy department and orthopedic consults, unremarkable diagnostic tests, and normal arthroscopy findings. Id. ¶¶ 4-5, 7-11, 15-16, 29, 54. Despite this, Parker still continued to treat Powell by changing his pain and anti-inflammatory medication to attempt to alleviate Powell's complaints. Id. ¶ 38.

Additionally, Dr. Bergamini showed Powell exercises which he could complete to strengthen any weakness in his knee and improve his complaints of pain and discomfort. Id. ¶ 47.

The fact that Powell continued to demand MRIs, a second opinion, and an orthopedic consultation and did not receive them are insufficient to state an Eighth Amendment claim. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves. The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted).[4] As Parker explained, such extraordinary requests were unreasonable in light of the negative clinical and diagnostic findings. Powell's disagreement with such conclusions and treatment regimens are not sufficient to maintain a deliberate indifference claim. Sonds, 151 F. Supp. 2d at 312. Therefore, no questions of fact have been shown by Powell as to whether the medical treatment he received complied with constitutional guarantees as it was appropriate and timely.

Accordingly, defendants' motion on this ground should be granted.

### E. Qualified Immunity

Defendants also contends that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon,

---

[4] After Powell was transferred and received an requested MRIs, the findings indicated that there was nothing wrong with his knees. Defs. Statement ¶ 54.

236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525, at *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, it has not been shown that defendants violated Powell's constitutional rights.

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted.

### IV.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 40)  be **GRANTED** and that judgment be entered as to all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

17

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 17, 2010
       Albany, New York

*[signature: David R. Horner]*
United States Magistrate Judge